**In the Matter of SPRINGFIELD CASKET CO., INC., Debtor.**

**Bankruptcy No. 3–81–02553.**

United States Bankruptcy Court, S. D. Ohio, W. D.

June 24, 1982.

224

Barry Reich, Springfield, Ohio, for debtor.

James R. Warren, Springfield, Ohio, trustee.

Thomas J. Veskauf, Springfield, Ohio, for Sec. Nat. Bank & Trust Co.

## PRELIMINARY PROCEDURE

CHARLES A. ANDERSON, Bankruptcy Judge.

This matter is before the Court upon "Application to Determine Secured Status" filed on 10 December 1981 by Security National Bank, hereinafter the Bank. The Application essentially requests that the Court determine the Bank's secured status and setoff rights as discussed below. The Court heard the matter on 15 January 1982, and the parties have submitted post-trial memoranda. At the hearing, the parties stipulated to the authenticity and admissability of the relevant documents. The following decision is based upon the parties' memoranda and the record.

## FINDINGS OF FACT

On 2 January 1981, the parties entered into a Note whereby the Bank loaned Debtor "$23,853.60 with interest from the date due at the rate of 21% per cent per annum and at the legal maximum rate per annum after maturity until paid." The term of the Note was one year. The Note also contained a consensual security agreement, as follows:

> As collateral security for the payment hereof, and of any and all other indebtedness of us, or any of us, to the holder hereof, present and future, hereby grants a security interest unto said bank in the following property: All existing accounts receivable & which will come into existence and all proceeds arising therefrom. All inventory now owned or hereafter acquired and all products and all proceeds arising therefrom. (Payments of $1,000.00 shall be made monthly on 10th of each month beginning Feb. 10, 1981 with balance due at maturity.) *Interest rate shall be 1 per cent above base rate which may be adjusted from time-to-time as base rate of Security National Bank & Trust Co. changes.

The Bank perfected its security interest by an earlier filing of a financing statement on 17 December 1974; and the filing of a continuation statement on 22 August 1979.

Note O.R.C. §§ 1309.21 [U.C.C. 9–302] and 1309.40 [U.C.C. 9–403]. The financing statement described the collateral as follows: "All of Debtor's inventory now owned or hereinafter acquired and all products and all proceeds arising therefrom." The Court notes that the proper perfection of the Bank's security interest is not in dispute. The Court also notes that neither the Debtor nor the Trustee have contested the amount alleged due on the underlying transaction, or the validity of either the security agreement, financing statement, or continuation statement.

Debtor filed its Petition in this Court under 11 U.S.C. Chapter 7 on 10 September 1981, and scheduled the Bank as a creditor in the amount of $18,356.94, and accounts receivable in the aggregate amount of $15,-547.00. The instant dispute stems from the Trustee's collection of two of the accounts, reported to the Court in the amount of $5,957.59 collected from Littleton Funeral Home on 6 October 1981, and $1,320.00 from Ohio Casket Co. on 23 October 1981. In its memorandum, the Bank further contends that the Trustee has possession of additional undeposited checks totaling $71,224.94. The Court notes, however, that these additional checks are not documented by the record, and that the matter was presented for determination of the proper distribution of only the two accounts described above. The Court, therefore, will consider the proper disbursement of only the $7,277.59 of proceeds from the two above-described accounts, hereinafter referred to as the subject accounts.

The basic dispute regarding the accounts is whether the Bank's financing statement is defective by "omission" of the classification, "accounts receivable," from the description of collateral in the financing statement, argued by the Trustee as rendering the Bank's interest in the subject accounts unperfected, and thus allowable only as an unsecured claim. See 11 U.S.C. § 544, and O.R.C. §§ 1309.20 [U.C.C. 9–301], 1309.21 [U.C.C. 9–302], and 1309.39 [U.C.C. 9–402]. In response, the Bank contends that the subject accounts receivable constitute "proceeds," as that term is used in O.R.C.

§ 1309.25(A) [U.C.C. 9–306], and are thus properly perfected by the financing statement which does include the term, "proceeds of inventory," in the description of the collateral. To the contrary, the Trustee argues that, since the terms, "accounts" and "proceeds," have separate statutory definitions, O.R.C. §§ 1309.01(A)(15) [U.C.C. 9–106] and 1309.25(A) [U.C.C. 9–306], respectively, a finding that the terms are synonymous would "violate the rules of statutory construction." In addition, the Trustee contends that the subject accounts "are not actually the proceeds of the collateral because the accounts arose from a finished product after application of showroom and sales service." The Trustee further argues, in the alternative, that the proceeds are not "proceeds of the inventory," as described in the financing statement, but are proceeds of the accounts receivable, and thus not perfected by the financing statement filing. O.R.C. § 1309.39 [U.C.C. 9–402].

The parties have also presented the question of the extent of the Bank's setoff rights under 11 U.S.C. § 553. The Bank's claim to a minimum setoff of $662.05, the balance in Debtor's checking account on the date of Debtor's Petition filing, was uncontested by the Trustee. The Bank, however, contends that its setoff rights extend to additional postpetition deposits into Debtor's checking account of $896.63. The Bank relinquished to the Trustee the total amount of monies on deposit ($1,559.27), pending order of the Court upon resolution of this matter. See 11 U.S.C. §§ 362(a)(7) and 553(a).

## DECISION AND ORDER

### I

The parties do not dispute that the Bank possesses a valid security interest in the inventory (caskets) and the sales proceeds, and that the security agreement also recites Debtor's accounts receivable, O.R.C. § 1309.14(A) [U.C.C. 9–203]. The initial question presented to the Court, therefore, is whether the Bank's interest in the proceeds of subject accounts receivable re-

ceived by the Trustee from pre-bankruptcy sales is perfected, so as to be enforceable against the Trustee in Bankruptcy. See 11 U.S.C. § 544 and O.R.C. § 1309.20(A)(2) and (C) [U.C.C. 9–301].

[1] Under the facts at bar, the proper means of perfection of the Bank's interest is the filing of a financing statement, O.R.C. § 1309.21 [U.C.C. 9–302]. In this case, the Bank has duly filed a financing statement, (O.R.C. §§ 1309.38 [U.C.C. 9–401]) and the Court notes that the fact that the financing statement predated the parties' security agreement does not alter the effectiveness of the financing statement. O.R.C. § 1309.39 [U.C.C. 9–402]. The narrow legal issue at bar, therefore, is whether the Bank's financing statement contains a "statement indicating the type, or describing the items, of collateral," so as to "reasonably identify" the subject accounts for purposes of O.R.C. Chapter 9 [U.C.C. Article Nine]. O.R.C. §§ 1309.08 [U.C.C. 9–110], and 1309.39(A) [U.C.C. 9–402].

The Bank essentially argues that the subject accounts constitute "proceeds of inventory," and are thus properly described in the Bank's financing statement. O.R.C. § 1309.39(A) [U.C.C. 9–402]. The Trustee contends that "accounts" should not be classified as "proceeds" because such determination would be violative of the "statutory scheme" which separately defines the terms, precluding finding that they are "synonymous." O.R.C. §§ 1309.01(A)(15) [U.C.C. 9–106] and 1309.25(A) [U.C.C. 9–306].

■ It is the determination of the Court that the Bank has properly perfected its security interest in the subject accounts by the description of the accounts as "proceeds of inventory." To begin with, the character of inventory is not changed by actions taken to retail the inventory. Hence, for purposes of Article Nine, goods remain inventory, though transformed from their component parts into a finished product retailed with a "showroom and sales service," as long as the goods are held for "immediate or ultimate sale." Official Comment to O.R.C. § 1309.07 [U.C.C. 9–109]. In addi-

tion, although, as argued by the Trustee, "proceeds" and "accounts" are not synonymous, "proceeds" are defined in O.R.C. § 1309.25 [U.C.C. 9–306] to include accounts receivable as a subclass within the class of "non-cash proceeds." O.R.C. § 1309.25(A) [U.C.C. 9–306]; *Western Decor & Furnishings Industries, Inc. v. Bank of America N.T.S.A.*, 26 U.C.C. Rep. 567, 91 Cal.App.3d 293, 154 Cal.Rptr. 287 (Ct.App.1979); *In re Mid State Wood Products Co.*, 9 U.C.C. Rep. 39, 323 F.Supp. 853 (N.D.Ill.1971). Thus, those accounts receivable which were received in "exchange" for Debtor's inventory as retailed are adequately described in the Bank's financing statement, O.R.C. § 1309.-25(A) [U.C.C. 9–306], as would be statutorily presumed in Ohio even had the Bank omitted "proceeds" from the description of collateral. O.R.C. § 1309.14(C) [9–203], effective in Ohio on 1 January 1979. Further, filing of a separate financing statement to cover proceeds is unnecessary if the proceeds are "collateral in which a security interest may be perfected by filing in the office or offices where the financing statement (for the original collateral) has been filed . . .," as is the case *instanter.* O.R.C. § 1309.25(C)(1) [U.C.C. 9–306].

■ In the event of insolvency, state law specifically recognizes the continuing perfection of a security interest in "identifiable non-cash proceeds and in separate deposit accounts containing only proceeds." O.R.C. § 1309.25(D)(1) [U.C.C. 9–306]. In the case *sub judice*, the Trustee contends that the monies in his possession are technically "proceeds of proceeds," (i.e. proceeds of the subject accounts rather than Debtor's inventory), and thus not perfected by the bank's financing statement. It is the opinion of this Court that the character of the proceeds should be determined by their status at the time of the filing of the bankruptcy petition, at which time the instant proceeds were accounts in which the Bank possessed a perfected security interest as discussed above. The Court further notes, however, that, regardless of a change in form of the proceeds, as long as the proceeds remain identifiable, (as the instant

monies are), conversion of proceeds from accounts receivable to cash should not operate to obviate perfection in the "proceeds of the proceeds." O.R.C. § 1309.25(D)(1) and (2).

## II

The final matter presented for resolution is the extent to which the Bank may properly exercise the "right" of setoff against deposits in Debtor's checking account. The figures provided to the Court for determination include the balance of the account at the time of the petition filing ($662.05), and the postpetition deposits to the account on the date the bank account was "turned over" to the Trustee. Note 11 U.S.C. §§ 362(a)(7) and 542.

The initial inquiry into the use of setoff rights should be whether the action to setoff occurs prior to or subsequent to a debtor's petition filing. If the creditor validly exercises the right of setoff prior to the debtor's petition filing, (see *Baker v. National City Bank of Cleveland*, 511 F.2d 1016 (6th Cir. 1975), cited in *In re McCormick*, 5 B.R. 726, 6 B.C.D. 889, 2 C.B.C.2d 1145 (Bkrtcy.N.D.Ohio 1980), such action is irreversible by the Bankruptcy Court subject only to the Trustee's power to avoid any "improvement in the creditor's position" within ninety days of the petition filing. 11 U.S.C. § 553(b)(1); *Donato v. Dominion National Bank of Tidewater*, 17 B.R. 708 (Bkrtcy.E.D.Virg. 1982). This precaution operates equitably to prevent a creditor from gaining advantage by the deliberate timing of his action to setoff when the offsetting debt is at a peak, thereby maximally exacerbating the debtor's situation and frequently precipitating the debtor's insolvency. If, however, the claim of setoff is asserted after the filing of the debtor's petition, as is the case *instanter*, 11 U.S.C. § 553(b)(1) is inapplicable, and instead protection of creditors' interests in the debtor's estate is provided by the automatic stay against the exercise of setoff rights. 11 U.S.C. § 362(a)(7).

The proper procedure for the postpetition exercise of setoff rights is to request relief from the automatic stay of 11 U.S.C. § 362(a)(7). The primary function of the automatic stay against setoff is to permit rehabilitation of, in particular, Chapter 11 debtors. H.R.Rep.No. 595, 95th Cong., 1st Sess., 183 (1977), *U.S.Code Cong. & Admin.News* 1978, 5787; cited in *In re Carpenter*, 14 B.R. 405, 8 B.C.D. 168, B.L.D. ¶ 68396 (Bkrtcy.M.D.Tenn.1981). In cases under 11 U.S.C. Chapter 7, such as the case at bar, it is the opinion of the Court that "cause" presumptively exists to grant relief from 11 U.S.C. § 362(a)(7). 11 U.S.C. § 362(d); see also, *In re Carpenter, supra.* It is the further finding of the Court that the instant Debtor has presented no evidence even intimating that it is capable of sustaining its burden of proof on the question of cause under 11 U.S.C. § 362(g)(2). It is therefore the conclusion of the Court that under the facts at bar, the Bank should be entitled to a grant of relief to exercise its rights of setoff as permitted in 11 U.S.C. § 553 (11 U.S.C. § 105), though the Court notes that the question of the Bank's setoff rights appears to be largely semantical, since secured claims and setoff claims are handled nearly identically in a corporate liquidation. 11 U.S.C. § 362.

Although both the Bankruptcy and Uniform Commercial Codes recognize the right to setoff, neither Code independently establishes the right of setoff, or provides rules regulating proper conduct in setoff attempts. For mention of setoff rights in the Bankruptcy Code see, 11 U.S.C. §§ 362(a)(7), 542(b), and 553; in the Uniform Commercial Code see §§ 4–201(1) [O.R.C. § 1304.07], 4–213 [O.R.C. § 1304.19], and 4–303 [O.R.C. § 1304.23]. Instead, the perimeters of setoff rights are determined under state law, largely derivative from common law and equitable principles. *Donato v. Dominion National Bank of Tidewater, supra*; and, *Big Bear Super Market v. Princess Baking Corporation*, 5 B.R. 587, 6 B.C.D. 842, 2 C.B.C.2d 1071 (Bkrtcy.S.D. Calif. 1980).

In Ohio, the right of banks to setoff "matured indebtedness" has long been recognized. *Walter v. National City Bank of*

*Cleveland,* 42 Ohio St.2d 524, 30 N.E.2d 425 (1975); *Bank v. Brewing Co.,* 50 Ohio St. 151, 33 N.E. 1054 (1893). Generally, setoff should be permitted absent compelling circumstances, subject only to traditional rules of equity. *Matter of Allbrand Appliance & Television Co. Inc.,* 16 B.R. 10 (Bkrtcy.S.D. N.Y. 1980).

The key inquiry in determination of the extent of setoff rights is the extent of mutuality of indebtedness. Setoff is only permitted to the extent that a creditor on one claim is also a "debtor" on a second claim between identical parties, and only if such claims are due and owing without any contingencies. *In re 18th Avenue Development Corp.,* 12 B.R. 10, B.L.D. ¶ 68077 (Bkrtcy.S.D.Fla. 1981). Thus, in the context of bankruptcy, postpetition debts may not provide the basis for setoff because mutuality ceases upon the filing of the bankruptcy estate, i.e. a claim owing to a creditor by a debtor may not be offset by a debt owing by the creditor to that debtor's *estate,* since the parties are not identical and mutuality has ceased. *In re Arctic Enterprises, Inc.,* 17 B.R. 839 (Bkrtcy.D. Minn. 1982); and *In re All-Brite Sign Service Co. Inc.,* 11 B.R. 409 (Bkrtcy.W.D.Ky. 1981).

The requirement that both the original debt and the offsetting debt be, in fact, debtor-creditor in nature is of particular significance in the context of "debts" owed by a bank in the form of checking account deposits. Although cash deposits to bank accounts establish an automatic debtor-creditor relationship, *In re All-Brite Sign Service Co., Inc., supra,* checking account deposits only place liability for the indebtedness on the bank when such deposits are actually paid to the bank, (for example, by the payor-drawee bank if the "creditor-debtor" bank is only a depositary bank). See O.R.C. § 1304.01(A)(12) and (13) [U.C.C. § 4–105]. Until such checks are paid to a bank, the relationship between the bank and customers is agent-principal, rather than debtor-creditor, and such "indebtedness" may not provide the basis for setoff. *Keyes v. Paducah & I. R. Co.,* 61 F.2d 611 (6th Cir. 1932), cited in *In re All-Brite Sign*

*Service Co., Inc., supra,* at 412. Postpetition setoff by a bank on the basis of the debtor's checking account, therefore, may only be accomplished to the extent that deposit in the account had been "cleared" and paid to the bank as of the date of the debtor's petition filing.

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the Bank's interest in the subject accounts receivable, held by the Trustee in the amount of $7,277.59, is deemed to be a secured claim.

IT IS FURTHER ORDERED that the Bank is granted relief from the automatic stay of 11 U.S.C. § 362(a)(7) to exercise its right of setoff as permitted by 11 U.S.C. § 553 as to prepetition deposits for which the Bank was liable on the date of the Petition filing, conformably with the above reasoning, and is granted its security interest rights as to the postpetition deposits from proceeds traceable to the bank account.