In re INTERMOUNTAIN PORTA STORAGE, INC., Debtor.

Paul G. QUINN, Trustee Plaintiff-Appellant,

v.

MONTROSE STATE BANK Defendant-Appellee.

Civ. A. No. 86–K–1636.
Bankruptcy No. 86 B 5364 M.

United States District Court, D. Colorado.

July 6, 1987.

James Scott Detamore, Aurora, Colo., for plaintiff-appellant.

Glenn W. Merrick, Elizabeth J. Lentini, Davis, Graham & Stubbs, Denver, Colo., for defendant-appellee.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

This case highlights the difficulties which arise from the complex relationship between Article 9 of the Uniform Commercial Code, adopted in this jurisdiction by Colo.Rev.Stat. 4–9 (1973), and Title 11 of the United States Code. Indeed the proliferation of cases such as this, not to mention the wide matrix of conflicting judicial responses to them, begs the question in my mind whether the Uniform Commercial Code should any longer bear such a misleading appellation.

Montrose Bank made two loans to debtor totalling $53,000. These were secured by means of a "floating lien" over debtor's accounts receivables and proceeds thereof. This security interest was properly perfected. On September 14, 1982 the bank set off $19,727.34 against the credit balance in debtor's checking account. At that point in time the account showed a balance of $21,373.05. This set-off decreased debtor's insufficiency by $16,795.98.

The trustee then sought to recover this decrease in insufficiency. On December 7 he filed his complaint against the bank.

He asserted first that the bank had, by its set off, improved its position within a ninety day period before the filing of debtor's bankruptcy petition contrary to 11 U.S.C. § 553(b). Second, he claimed the set-off constituted a preferential transfer within the meaning of 11 U.S.C. § 547, thereby entitling trustee to recover the sum in question. The bank then filed a motion for summary judgment. On April 15, 1986 the bankruptcy judge granted the order. 59 B.R. 793. The trustee now appeals. The judgment of the bankruptcy court is affirmed.

The bankruptcy court reasoned first, the floating lien constituted a security interest. The nature of this interest was not altered by the terms of Colo.Rev.Stat. 4-9-306(4) (1973) which limits the extent of security interests in commingled cash accounts. Second, it held the proceeds deposited in the account could be identified by applying the "lowest intermediate balance rule". Third, 11 U.S.C. § 553(b) did not apply to the proceeds of a security interest, thereby preventing the trustee from recovering the insufficiency on the basis of improvement of position. Fourth, it decided 11 U.S.C. § 547 did not apply to set offs, preventing recovery on the basis of preferential transfer.

Two basic issues arise in this appeal, first, whether the bank's lien over the proceeds of debtor's accounts receivables did in fact constitute a security interest and second, if so whether there exists a mechanism by which the amount in question can be recovered.

The trustee has stated in his original brief and in his reply a number of grounds of appeal. First, he claims in the context of insolvency proceedings Colo.Rev.Stat. 4-9-306(4)(d) imposes a separate definition of secured interests. Second, he asserts the provision should be applied here, making the bank's claim an unsecured one. Third, he maintains the proceeds of the bank's interest here were not "identifiable" as required by Colo.Rev.Stat. 4-9-306(2), thereby preventing that interest from being secured. Fourth he claims 11 U.S.C. § 553(b) does in fact apply to secured claims. Fifth,

he maintains by exercising its right of set off, the bank waived the rights arising from the security interest and is accordingly estopped from raising such rights in the manner attempted here.

I assume jurisdiction in this appeal under 28 U.S.C. § 1334, 28 U.S.C. § 157, and 28 U.S.C. § 158. There is no dispute of fact involved in the appeal. I am empowered to review conclusions of law of the bankruptcy court *de novo*.

## I. THE EFFECT OF COLO.REV.STAT. 4-9-306(4)(d).

Colo.Rev.Stat. 4-9-306(4) reads as follows;

> In the event of insolvency proceedings instituted by or against a debtor, a party with a perfected security in proceeds has a perfected security only in the following proceeds:
>
> ... (d) In all cash and deposit accounts of the debtor in which proceeds have been commingled with other funds, but the perfected security interest under this paragraph (d) is:
>
> ... (II) Limited to an amount not greater than the amount of cash proceeds received by the debtor within ten days before the institution of the insolvency proceedings ...

The problem of construction with which we are faced is whether this provision operates so as to supplement or to replace the traditional common law rules of tracing. If it merely supplements those rules the court may apply the lowest intermediate balance rule to the debtor's account. In this case, this would enable the bank to have a fully secured interest in the proceeds of the accounts receivables. On the other hand, if the provision abrogates those common law rules, the bank's security interest will be limited to the amount received by the debtor within ten days before the institution of the insolvency proceedings. Here, this is nothing.

The trial judge construed the section as follows:

> The calculation described in 4-9-306(4)(d) does not affect the perfected security interest in the instant case because "the change in existing law made by this sec-

tion relates to non-identifiable proceeds." C.R.S. 1973 § 4–9–306, Official Comment.

Order of April 15, 1986 at p. 6

The judge accordingly went on to hold that the proceeds here were in fact clearly identifiable by the "lowest intermediate balance" rule. In so concluding he erred in law.

■ The matter has been discussed by the Tenth Circuit. In *Maxl Sales Co. v. Critiques, Inc.,* 796 F.2d 1293 (10th Cir. 1986) the court made clear its view that 4–9–306(4)(d) operated not to supplement but to replace common law tracing rules in the context of insolvency proceedings. I feel it helpful to quote the decision at some length.

This section provides new rules for insolvency proceedings. Paragraphs 4(a) through (c) substitute specific rules of identification for general principles of tracing. Paragraph 4(d) limits the security interest in proceeds not within paragraphs 4(a) through (c) only to an amount of the debtor's cash and deposit accounts not greater than the cash proceeds received within ten days before the insolvency proceedings. "The grant of a security interest in commingled funds under section ... 9–306(4)(d) is not an expansion of the pre-Code right of a secured creditor to trace proceeds from the disposition of secured collateral into such funds; instead, it is a substitution for and a limitation upon that right." *Fitzpatrick v. Philco Finance Corp.* 491 F.2d. 1288, 1292 (7th Cir.1974).... The drafters of the Code apparently believed that these hard and fast rules of identification were preferable to the imprecise and time consuming tracing theories. *Thus, the fact that certain commingled cash proceeds can be identified is immaterial in the context of an insolvency proceeding.*

*Maxl Sales* at 1300. (Emphasis added).

The court here was concerned with the equivalent provision in the Kansas statute K.S.A. 84–9–306 4(d). This is in all material respects identical to the provision before this court. The commentary to the Kansas

statute does not contain the statement which the trial judge quoted from the official comment to the Colorado Code. Nonetheless, I shall follow the reasoning of the Tenth Circuit here, noting that the comment to the Colorado Code was drafted before the significant amendments to 4–9–306(4)(d) effected in 1977 (See the original 1973 version of this provision). In any event, the assertion cited by the judge is not unambiguous. While one could argue that the change introduced into the law by the provision *does* only relate to non-identifiable cash proceeds, its real effect is to alter the definition of identifiability in one particular context.

In so concluding I am supported by the following considerations. The intent of the drafters of the Uniform Commercial Code upon which the Colorado provision is based was clearly that the traditional rules of tracing should be replaced in the specific context of insolvency proceedings by a more definite and workable procedure. In J. White & R. Summers, Uniform Commercial Code § 24–6 at 1013 the following is said of 9–306(4)(d)

The subsection is a descendant of and a substitute for the common law tracing rules that might have applied in some states ... the secured creditor gives up the common law rights such as 'the lowest intermediate balance rule' in return for the claim he receives under subsection (d)

"The purpose of subsection (d) is to eliminate the pre-Uniform Commercial Code theories of tracing" *In Re Charter First Mortg. Co.* 56 B.R. 838, 849 (Bkrtcy.D.Or. 1985). "The purpose of U.C.C. § 9.306(4)(d) is to substitute new rules of identification for general principles of tracing when dealing with an insolvency proceeding" *First National Bank of Amarillo v. Martin* 48 B.R. 317, 320 (Bkrtcy.D. Tex.1985). "Section 9–306(4) eliminates the common law doctrine of tracing" *In Re Jameson's Foods, Inc.* 35 B.R. 433, 438 (Bnkrtcy D.Sth.Car.1983). Similar assertions appear in the Official Comment to the U.C.C. 2(a) and Kaye Preferences Under the New Bankruptcy Code 54 Am.Bankr.

L.J. 197, 212 (Summer 1980), *Matter of Glaubinger Machinery Co., Inc.* 58 B.R. 38 (Bkrtcy.N.J.1986), *In re Cooper*, 2 B.R. 188, 196 (Bkrtcy.D.Tex.1980).

Thus, in the context of insolvency proceedings, the principles outlined in 4–9–306(4) replace the common law rules of tracing. Accordingly, if the set-off here occurred within such a proceeding, the bank's security interest is non-existent. Our next problem is to decide if in fact this set-off did actually occur in the course of an insolvency proceeding.

## II. THE DEFINITION OF "INSOLVENCY PROCEEDINGS"

■ The exact terminology employed in 4–9–306(4) is *"In the event* of insolvency proceedings ... a secured party ... *has* a perfected security interest ..."* (Emphasis supplied). Colo.Rev.Stat. 4–1–201(22) defines insolvency proceedings in terms of "any assignment for the benefit of creditors or other proceedings intended to liquidate or rehabilitate the estate of the person involved".

Here, the set-off occurred on September 14, 1982. The petition for bankruptcy was filed on November 16, 1982.

This issue was not raised at the initial hearing, so I do not have the benefit of the bankruptcy judge's consideration of it. The trustee's argument was that the provision in question must be read in the light of the ninety day rule imposed by 11 U.S.C. 553(b) and 11 U.S.C. 547. He is not claiming that the provision retrospectively invalidates all foreclosures of security agreements whenever made, but instead that the provision operates so as to allow the trustee to attack foreclosures occurring within ninety days of bankruptcy to the extent the amount in question exceeds the funds deposited into the account within ten days of bankruptcy.

It would be discriminatory, he claims, to interpret the provision in question in any other fashion. He cites the example of two creditors (A and B) in a similar position to that of the bank. A sets his debt off just before bankruptcy proceedings are filed while B sets his off just after bankruptcy.

If the bank's construction of the provision is correct, then A could keep his money, while B could not.

In support of this construction, trustee cites as his sole authority *Citizen's National Bank v. Mid-States Dev. Co.*, 177 Ind. App. 548, 380 N.E.2d 1243 (1978). I find this authority singularly unhelpful. In fact if anything the court's remarks lean against trustee's contention.

> ... [T]he limitations contained in section 9–306(4) have no operation outside the area of insolvency proceedings ...

at 1246.

Looking at the plain wording of the statute, it is clear that the terms of 4–9–306(4) have no application in the present case. The set off here occurred well before the institution of any form of "proceedings". In this regard the provision may well create an anomaly when read with Title 11 U.S.C. If this is the case, it is not within my provenance to rectify it. In any event I find the example furnished by the trustee specious. The "discrimination" effected by the statutory rule he has cited is no more "discriminatory" than would be the case were his construction accepted and two creditors set off their respective debts, one ninety-one days and the other eighty-nine days before the institution of the insolvency proceedings.

I note further that in *Maxl Sales* the Tenth Circuit evinced a clear reluctance to extend the phrase "insolvency proceedings" to include the appointment of a receiver. Similarly, in *In re Charter First* it was observed in a context in which a number of separate insolvency proceedings had been instituted

> ... [O]ne date should control for purposes of ORS 79.30604(8) and that date should be the date the bankruptcy petition is filed.

While not necessarily subscribing to the full rigour of this assertion, I do not think 4–9–306(4) can possibly be construed to govern a set off effected some two months before the institution of any form of proceedings. Even if the trustee's allegation that the bank knew of the proposed filing

of bankruptcy is correct, without so deciding, I decline to extend the provision beyond its plain words.

Accordingly, the specific rules for identification of proceeds for commingled funds outlined in 4–9–306(4)(d) do not apply to the present facts. The next issue to be decided is whether an independent argument can be adduced to bar application of the lowest intermediate balance rule.

### III. THE MEANING OF "IDENTIFIABLE"

■ Outside the insolvency proceedings rule of 4–9–306(4)(d), the security interest is circumscribed by 4–9–306(2). This reads as follows:

> Except where this article otherwise provides, a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof unless the disposition was authorized by the secured party in the security agreement or otherwise, and also continues in any *identifiable* proceeds including collections received by the debtor.
>
> (Emphasis added)

Trustee's argument here is that the criteria for determining identifiability should not be the lowest intermediate balance rule. I reject this argument.

The cases and statements I have cited above clearly posit that in fact situations such as the present, where there exists a commingled fund and the insolvency proceeding rule does not apply, the common law rules of tracing should govern the question of identifiability. "Whenever proceeds of sale of collateral can be traced into a bank account, proceeds remain identifiable and a security interest in them continues as provided by 9–306(2)" *Clayton v. First American Bank 614 P.2d 1091, 1094* (S.Ct.Okl.1980), *Brown and Williamson T. Corp. v. First National Bank of Blue Island* 504 F.2d 998, 1002 (7th Cir.1974), *Universal CIT Credit Corp. v. Farmers Bank of Portageville* 358 F.Supp. 317, 324 (E.D.Mo.1973).

The only positive authority cited by the trustee in support of this proposition is an argument propounded by Professor Grant

Gilmore, one of the drafters of the UCC, and the case of *Morrison Steel Co. v. Gurtman, et al.* 113 N.J.Super. 474, 274 A.2d 306 (1971). The former has now been expressly dissented from, *Citizens National Bank* 1246 n. 5, while the latter has been dubbed unpersuasive, *Brown and Williamson* 1002, and "rare", Bankrupting the Proceeds Section: Recent Interpretations of Section 9–306(4)(d) of the UCC, 55 Tex L.R. 891, 898 n49.

The Trustee is correct when he asserts that tracing rules, like indeed the remedy of set off itself, are subject to the equitable discretion of the court, but he has not shown in my mind why the bank should be denied this remedy in the instant situation. In fact his arguments in this regard display a gross misconception as to the nature and function of the "floating lien", which was itself originally a product of the equitable jurisdiction of the nineteenth century common law courts. Far from representing a fraud either upon the debtor or upon the general body of creditors, securities such as that before us in this case which enable a party to commingle funds in a general bank account and freely draw upon those funds in the normal course of business while still subject to a charge are frequently instrumental in facilitating continued solvency.

On this ground also, the trustee's appeal is dismissed.

### IV. APPLICATION OF 11 U.S.C. 553(b) TO SECURED CLAIMS

The trustee's fourth ground of appeal relates to 11 U.S.C. 553(b). This reads as follows:

> (1) Except with respect to a setoff of the kind described in section 362(b)(6) or 365(h)(1) of this title, if a creditor offsets a mutual debt owing to the debtor against a claim against the debtor on or within 90 days before the date of filing of the petition then the trustee may recover from such creditor the amount so offset to the extent that any insufficiency on the date of such setoff is less than the insufficiency on the later of— ...

The trustee maintains that contrary to the bankruptcy court's holding this provision does apply to secured claims. I reject this proposition.

■ The purpose of 553(b) is to prevent one creditor from improving his position at the expense of his fellow creditors. However, as was pointed out in *In re Union Carthage Co.* 38 B.R. 134, 138 (Bkrtcy D.Ohio 1986):

> Under section 506(a) a secured claim is always fully secured. It follows that a creditor cannot improve his position with respect to a secured claim. A secured claim therefore cannot be subject to an insufficiency under section 553(b).

■ A similar conclusion in this regard was reached in *Matter of Moody & Newton, Inc.*, 64 B.R. 211, 212 (Bkrtcy.M.D.Fla. 1986). The reasoning here is correct. While, as the trustee points out, 553(b) does not mention the term "improvement of position", the section was clearly envisaged as an extension of 547(c), which revolves around this concept, "Congress has adopted the improvement of position test of section 553 from the test in section 547(c)" H.R.Rep. No. 95–595, 95th Cong. 1st Sess. 185, U.S.Code Cong. & Admin.News 1978, pp. 5963, 6145, *In re Van Shop* 8 B.R. 73 (Bkrtcy.Ohio, 1980), *In re Balducci Oil Co. Inc.* 33 B.R. 847, 852 (Bkrtcy.Colo.1983). The authority cited by the trustee, *In re Assiante*, 28 B.R. 903 (Bkrtcy.R.I.1983) merely establishes the language of section 553(b) not to be susceptible to equitable treatment. It says nothing about the scope of the section. Given the above context, application of the "mathematical" interpretation demanded by *In re Assiante* leads inexorably to the conclusion that secured claims do not come within the scope of the provision.

### V. EXCLUSION OF REMEDIES

■ The trustee claims finally that by exercising its right of set off the bank is estopped from relying upon its security interest. He argues that the right of set off is distinct and inconsistent with the right to enforce security interests and accordingly, having elected to rely upon the former bank cannot now seek to use the latter to avoid the strictures imposed by 553(b).

This argument is misplaced. The trustee has failed to cite any authority for the proposition that the right of set off is exclusive of the right to enforce consensual security interests. This is not particularly surprising, since I strongly suspect that none exists. In fact the right of set off is just one component of the bundle of rights a creditor—whether or not his claim is secured—possesses against a debtor. Where the creditor has a secured claim, the right compliments and reinforces the security interest. There is nothing conceptually incorrect in allowing the exercise of both. In this regard the remarks of the Eleventh Circuit in *Griffin v. Continental American Life Insurance Company* 722 F.2d 671, 673 (11th Cir.1984) are relevant:

> Plainly banks need not comply with the requirement of Article Nine in order to create a right to set off against their depositors.

On this ground, the appeal must also fail.

It is therefore ORDERED that this appeal is dismissed. The judgment of the bankruptcy court is affirmed.