In re FIRST AMBULANCE CENTER OF TENNESSEE, INC., Debtor.

FIRST AMBULANCE CENTER OF TENNESSEE, INC., Plaintiff,

v.

NATIONSBANK, Defendant.

Bankruptcy No. 95–01664–AT3–11.
Adv. No. 95–0103A.

United States Bankruptcy Court,
M.D. Tennessee.

May 3, 1995.

---

Jeanne C. Schuller, Henry E. Hildebrand, III, William T. Cheek, III, Nashville, TN, for debtor.

James R. Kelley, Marc T. McNamee, Nashville, TN, for defendant.

## MEMORANDUM

ALETA ARTHUR TRAUGER, Bankruptcy Judge.

This matter came before the court upon the debtor's Amended Complaint for turnover of property of the estate under § 543[1] or, in the alternative, to avoid a preferential transfer under § 547(b) or recover amounts set off under § 553(b)(1). For the reasons set forth below, the court will grant recovery of setoff under § 553(b)(1). The following constitute findings of fact and conclusions of law. F.R.B.P. 7052.

### I

On December 22, 1992, the debtor, First Ambulance Center of Tennessee, executed two promissory notes in favor of Nations-Bank on two lines of credit, in the maximum principal amounts of $450,000 and $200,000 respectively. The notes stated that they were secured by all truck chassis, inventory, accounts receivable, furniture, fixtures and equipment of the debtor, as well as an assignment of life insurance and the personal guaranties of Jasper and Terri Moon, the debtor's president and secretary. Each note had a term of approximately one year and both were subsequently renewed, most recently on December 1, 1994. Under the terms of the renewal, the notes were to mature on March 1, 1995.

Also in December 1992, the debtor executed a term note in favor of NationsBank in the original principal amount of $46,000. That note was secured by substantially the same assets as the line of credit notes and stated a maturity date of January 1, 1998.

The debtor defaulted on its obligations under the line of credit notes and on March 1, 1995, NationsBank set off the balance in the debtor's checking account on that date against the amounts owing under the notes. NationsBank notified the debtor of the setoff by letter dated March 2, 1995.

The parties have stipulated that the balance in the debtor's checking account on December 12, 1994, was $3,523.61 and that the balance on the date of setoff was $83,069.00. They have also stipulated that the principal amount of the debt has remained constant since December 12, 1994, at approximately $519,000 to $521,000. Jasper Moon testified that the debtor had made the interest payments on the debt so the amount of interest owing on the debt did not increase between December 12, 1994, and the date of setoff.

### II

Section 553 does not create a right of setoff, but instead recognizes whatever rights of setoff a creditor may have under nonbankruptcy law. 11 U.S.C. § 553(a); *In re Haffner*, 12 B.R. 371, 373 (Bankr.M.D.Tenn.1981). Section 553 does, however, place certain limits on the right of setoff. One of those limits is found in § 553(b)(1), which provides:

Except with respect to a setoff of a kind described in [certain Code sections not relevant here], if a creditor offsets a mutual debt owing to the debtor against a claim against the debtor on or within 90 days

---

1. The Amended Complaint cites § 543, the section regarding turnover by a custodian. From the oral argument on April 5, 1995, and the debtor's Memorandum filed on April 12, 1995, it appears that the parties are actually focusing on § 542, the general turnover provision which is more appropriate for this factual situation.

before the date of the filing of the petition, then the trustee may recover from such creditor the amount so offset to the extent that any insufficiency on the date of such setoff is less than the insufficiency on the later of—

(A) 90 days before the date of the filing of the petition; and

(B) the first date during the 90 days immediately preceding the date of the filing of the petition on which there is an insufficiency.

Section 553(b)(2) defines "insufficiency" as "the amount, if any, by which a claim against the debtor exceeds a mutual debt owing to the debtor by the holder of such claim."

The purpose of this section is to discourage prepetition setoffs, which will likely precipitate a bankruptcy filing, and to encourage workouts. *See* Report of the Committee on the Judiciary to Accompany H.R. 8200, H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 186 (1977). As the Third Circuit noted:

> The concern of Congress in enacting the improvement in position test was that creditors, primarily banks, that had mutual accounts with the debtor would foresee the approach of bankruptcy and scramble to secure a better position for themselves by decreasing the "insufficiency," to the detriment of the other creditors. Such a circumstance would not be improbable if banks were allowed to take advantage of any improvement in their position in the ninety days before bankruptcy. A bank with a continuing relationship with the debtor could not only anticipate the bankruptcy filing, but also pressure the debtor to increase its deposits, or reduce its short-term loans to the debtor.

*Lee v. Schweiker,* 739 F.2d 870, 877 (3d Cir. 1984). *See Matter of Springfield Casket Co.,* 21 B.R. 223, 227 (Bankr.S.D.Ohio 1982) (§ 553(b) "operates equitably to prevent a creditor from gaining advantage by the deliberate timing of his action to setoff when the offsetting debt is at a peak, thereby maximally exacerbating the debtor's situation and frequently precipitating the debtor's insolvency").

■ The Code addresses these concerns by providing more advantageous treatment for creditors who wait until after bankruptcy to exercise setoff rights. Such creditors are not subject to § 553(b) and are entitled to adequate protection of their claim. *See* 11 U.S.C. § 506(a); *In re Row Steel, Inc.,* 33 B.R. 20, 22 (Bankr.E.D.N.C.1983); *Springfield Casket,* 21 B.R. at 223; 3 *Norton Bankruptcy Law & Practice 2d* § 63:1 at 63–7 and 63:17 at 63–76. In contrast, when a prepetition setoff is recovered under § 553(b), the resulting claim of the creditor is treated as unsecured. 3 *Norton, supra,* § 63:1 at 63–7. The differing treatment of these claims, as well as the likelihood that the creditor's action will precipitate bankruptcy filing within 90 days (as is frequently the case with bank setoffs against debtors' operating funds), are matters a creditor must consider in deciding when to exercise its setoff rights. *Id.* at n. 21.

■ To apply § 553(b), the court must first determine whether the March 1, 1995, action by NationsBank was a valid setoff as contemplated by § 553(a). The elements of a valid setoff are: 1) a prepetition debt owed by the creditor to the debtor; 2) a prepetition claim of the creditor against the debtor; and 3) the debt and the claim must be mutual obligations. *In re Bennett Co., Inc.,* 118 B.R. 564, 565 (Bankr.M.D.Tenn.1990). In this case, it is clear that the first two requirements are met—the funds in the debtor's checking account were a prepetition debt owed by NationsBank to the debtor and the claim evidenced by the various notes was a prepetition claim of NationsBank against the debtor. The third requirement, mutuality, exists when each party owes something to the other in the same capacity. *Id.* That requirement is also met here. *See In re Hinson,* 65 B.R. 675 (Bankr.W.D.Tenn.1986) (bank-depositor relationship gave rise to mutual debts).

■ Next, the court must apply the two-point test of § 553(b). The court must first determine the amount by which NationsBank's claim exceeded the amount it owed to the debtor on the petition date. It must then determine the amount by which such claim exceeded such debt on the date 90 days before the petition. The court must then

compare the two results. If the insufficiency on the date of setoff was less than the insufficiency 90 days prior to bankruptcy, then the debtor may recover the difference between those two amounts. If the insufficiency on the setoff date was greater than or equal to the insufficiency 90 days prior to the petition, then the debtor is not entitled to recovery.

In this case, the parties have stipulated to the account balances—i.e., the amount owing to the debtor from NationsBank—on December 12, 1994 [2] and March 1, 1995. The stipulations and Mr. Moon's testimony demonstrate that the amount of the debt owing from the debtor to NationsBank did not change between those dates. Because there was no change in the amount of the debt owing to NationsBank, the difference between the insufficiency on December 12 and the insufficiency on March 1 is simply the difference between the account balances (i.e. the amount owing from NationsBank to the debtor) on the two dates. The balance on March 1—$83,069—was greater than the balance on December 12—$3,523.61. NationsBank's insufficiency, therefore, decreased between the relevant dates by $79,545.36 and the debtor is entitled to recover that amount under § 553(b)(1).

■ NationsBank asserts that there is insufficient evidence to make the necessary calculation under § 553(b). Specifically, it argues that there is no evidence regarding the balance on the term note which must be included in determining the insufficiency. NationsBank bases this argument on Mr. Moon's inability to testify from firsthand knowledge as to the term note balance and whether it changed during the 90 days prior to bankruptcy.

The court rejects this argument. Regardless of Mr. Moon's testimony, it is clear that NationsBank has throughout this proceeding included the term note in its own calculation of the total indebtedness owing by the debt-

or. In its Motion for Relief from Automatic Stay filed on March 23, 1995, NationsBank stated that the principal amount of the debt owing as of the date of the petition was $520,860.63 "as evidenced by *three promissory notes* ... secured by Security Agreements and appropriate financial statements," all of which were attached to the motion as Collective Exhibit A (emphasis added). Those three notes—the two lines of credit notes *plus* the term note—together with their supporting documentation comprise Collective Exhibit A. Further, at the March 24 preliminary hearing on this matter, NationsBank stipulated that "the principal amount of *the debt* has remained constant since 90 days prior to the filing of bankruptcy" at approximately $519,000 to $521,000, and that "*the loan documents*" were those attached to the Motion for Relief from Stay (emphasis added). As in the Motion for Relief, there was no attempt to distinguish between the term note indebtedness and the line of credit indebtedness for purposes of calculating the total balance due from the debtor.

NationsBank's next defense is that § 553(b)(1) simply does not apply to secured claims, because there can be no improvement in position with regard to a secured claim. This argument also fails for several reasons. First, while the argument may have some appeal for *fully* secured claims, NationsBank in this case is an *under* secured creditor,[3] which means its claim is divided into both secured and unsecured components. NationsBank would clearly "improve its position" if the setoff decreased the unsecured portion of the claim.

■ More importantly, however, § 553(b)(1) does not differentiate between secured and unsecured claims in determining insufficiencies. It merely says "claim" which is defined under § 101(5) to mean any "right to payment, whether ... secured or unsecured." This is in contrast to, for instance,

---

**2.** The petition was filed on March 10, 1995. Ninety days prior to that date was December 10, 1994, which was a Saturday. The parties have therefore used December 12 as the operative day for measuring the account balance since that was the first business day after December 10.

**3.** NationsBank has asserted since the setoff that the debtor has no equity in the collateral, and NationsBank has not contested the debtor's assertion that it is undersecured. *See* Motion for Relief from Stay filed March 23, 1995, and Pretrial Statement of NationsBank of Tennessee, N.A. filed April 5, 1995.

§ 547(c)(5), which specifically takes into account a creditor's secured status during the 90–day period.[4] Clearly, when Congress intends for a creditor's secured status to be relevant, it knows how to draft a statute accordingly. The absence of such clear language in § 553(b) indicates that secured status was not to be considered in the calculation of insufficiencies. *See BFP v. Resolution Trust Corp.,* —— U.S. ——, ——, 114 S.Ct. 1757, 1761, 128 L.Ed.2d 556 (1994) ("It is generally presumed that Congress acts intentionally and purposely when it includes particular language in one section of a statute [here, the Bankruptcy Code] but omits it in another."). Further, under § 506(a), a setoff claim is itself considered a secured claim. To exempt secured claims from § 553(b)(2) would therefore render that section meaningless. *See Smith v. Babcock,* 19 F.3d 257, 263 (6th Cir.1994) (court must avoid interpretation which renders some portion of statute meaningless or superfluous).

While the court is aware that some courts have adopted NationsBank's position on this issue,[5] this court believes that the clear statutory language mandates the opposite conclusion. Not only is NationsBank's argument not supported by the statutes, it also runs counter to the express purpose of § 553(b)(1). As one commentator explains,

The intent of § 553 is to discourage precipitous exercises of setoff prior to petition so as to encourage business workouts, and to reward forbearance with adequate protection of setoff claims afterward. Given this legislative design, it would appear anomalous to exclude secured claims from the calculation of insufficiencies. The effect of such an exclusion is likely to be an increase in the frequency of prepetition exercises of setoff.

3 *Norton, supra,* § 63:18 at 63–79.

■ NationsBank's final argument is that even if the debtor recovers the excess setoff amount, that recovery remains NationsBank's cash collateral for which the debtor must provide adequate protection. While this argument may have some merit in the context of turnover of estate property under § 542, it is irrelevant under either § 547 or § 553(b), which provide for recovery of transfers *or the value thereof* for the benefit of the estate. *See* 11 U.S.C. § 550(a). A creditor's lien no more reattaches to a recovered setoff than it does to a recovered preference or fraudulent transfer.[6]

Further, the purpose of § 553(b) would be undermined by permitting the creditor's lien to reattach to funds recovered under that section. If the creditor would be put in as good a position after prepetition setoff as if it had waited until post-petition to exercise

---

4. Section 547(c)(5) permits recovery of a transfer of a security interest "to the extent that the aggregate of all such transfers to the transferee caused a reduction . . . of any amount by which the debt secured by such security interest exceeded the value of all security interests for such debt" between the later of certain specified dates and the date of the petition.

5. *See, e.g., In re Intermountain Porta Storage,* 74 B.R. 1011 (D.Colo.1987) and *In re Union Cartage Co.,* 38 B.R. 134 (Bankr.N.D.Ohio 1984), both cited in NationsBank's memorandum. The *Union Cartage* court relied on § 547(c) and § 506(a) to conclude that because "a secured claim is always fully secured . . . a creditor cannot improve its position with respect to a secured claim" and such claim cannot be subject to an insufficiency. 38 B.R. at 134. The *Intermountain* court based its decision on *Union Cartage* and § 547(c). 74 B.R. at 1017. Neither case mentioned the statutory concerns discussed above.

6. The general rule enunciated in § 552(a) is that "property acquired by the estate or the debtor after commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case." Because funds recovered pursuant to §§ 553(b)(1) and 550 are acquired after commencement of the case, they are not subject to any lien under § 552(a).

Section 552(b)(1) provides an exception to this general rule for security interests in proceeds of collateral, which NationsBank asserts it has here. This exception, however, does not apply to funds recovered by the estate pursuant to the avoiding powers. Because causes of action based on those powers belong to the estate, not to the debtor individually, and arise only upon the filing of a bankruptcy petition, they are independent rights which cannot be said to be proceeds of any creditor's collateral. *See In re Integrated Testing Products,* 69 B.R. 901, 904–05 (D.N.J.1987); *In re Sun Island Foods,* 125 B.R. 615, 619 (Bankr.D.Haw.1991); *In re Lundford Fruit Products, Inc.,* 99 B.R. 18, 25 (Bankr. C.D.Cal.1989).

those rights, there would be no incentive for creditors to postpone setoff and avoid sending debtors into bankruptcy.

Because the court holds that the debtor is entitled to recovery under § 553(b)(1), it need not address debtor's claims under §§ 542 and 547. An appropriate order will be entered.

### ORDER

For the reasons stated in the Memorandum filed herewith, it is hereby **ORDERED** that the defendant shall pay to the plaintiff the sum of $79,545.36 pursuant to 11 U.S.C. §§ 553(b)(1) and 550.