**In re Kevin KLEATHER, Debtor.**

**Bankruptcy No. 96–35676.**

United States Bankruptcy Court, S.D. Ohio, Western Division.

April 9, 1997.

Brian H. Ward, Miller & Luring, Troy, Ohio, for Debtor Kevin Kleather.

Alan J. Statman, Reisenfeld & Statman, Cincinnati, Ohio, for Creditor Fifth Third Bank of Western Ohio.

George W. Ledford, Englewood, Ohio, Chapter 13 Trustee.

## DECISION AND ORDER GRANTING IN PART AND DENYING IN PART FIFTH THIRD BANK OF WESTERN OHIO'S MOTION FOR RELIEF FROM STAY

WILLIAM A. CLARK, Chief Judge.

This court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the standing General Order of Reference entered in this District on July 30, 1984. Motions to terminate, annul, or modify the automatic stay are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(G). The following Decision and Order constitutes the court's findings in accordance with Federal Rule of Bankruptcy Procedure 7052(a).

### PROCEDURAL POSTURE

This matter is before the court upon the Motion for Relief from Automatic Stay [Doc. # 13–1] and Supplemental Memorandum in Support [Doc. # 20–1] by Fifth Third Bank of Western Ohio ("Movant"), the Chapter 13 Trustee's Response [Doc. # 17–1], and the Debtor's Memorandum in Opposition [Doc.

# 18–1] and Supplemental Memorandum in Opposition [Doc. # 21–1].

The court conducted a hearing on the above pleadings on February 18, 1997. After careful consideration of the parties' pleadings, the arguments presented at the hearing, and an independent examination of the legal principles in question, the court is now prepared to issue its decision in this matter.

## FINDINGS OF FACT

As the parties agreed at trial, the facts appurtenant to this dispute are essentially uncontested. The Debtor, Mr. Kevin Kleather, maintains a checking account with the Movant, Fifth Third Bank of Western Ohio ("Fifth Third Bank"). This account existed both prepetition and postpetition. On April 22, 1994, Debtor borrowed $36,000 from Movant, offering as security on the transaction the funds in the checking account in question. On December 5, 1996, the Debtor petitioned this court for bankruptcy relief under Chapter 13 of the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.* (1994) (the "Bankruptcy Code"). At that time, the outstanding balance on the loan was $12,694.50, and the balance of the checking account was $9,136.55.

Debtor listed this debt in his Schedules at the time of the petition, but problems arose in properly identifying the correct address at which to notify Movant of the bankruptcy. In the petition, Debtor listed Movant's claim by the address of the Consumer Loan department of Movant's parent holding company, Fifth Third Bank in Cincinnati, Ohio. That address is different from the address contained in the loan document, but is the return address listed on the monthly loan statements sent by Movant. Movant stipulated at the February 18, 1997 hearing that this address did appear on the statements, and that the address is that of a payment center at the parent holding company, which processes payments for affiliate banks on a contract basis. Movant also stipulated that this is where the Debtor mailed his payments.

Movant alleges that because of the confusion regarding the addresses, notice of the bankruptcy petition did not reach Movant's bank until some time after the initial petition date of December 5, 1996. Movant applied an administrative freeze to the checking account on January 15, 1997, approximately six weeks after the petition date. In the interim period, Movant continued to process checks and deposits, and the balance of the checking account fluctuated greatly, at one time being as low as $1,944.23. At the time of the administrative freeze, the balance of the checking account exceeded the balance at the time of the petition, $9,136.55. Movant administratively froze this amount, $9,136.55, and permitted the Debtor continued access to the remainder in the account.

## CONCLUSIONS OF LAW

At the February 18, 1996 hearing, Movant Fifth Third Bank raised several independent yet interrelated issues. First, Movant challenged the notice in these proceedings, raising the question of whether notice of the order for relief upon a parent holding company, at an address where the Movant conducts its usual business, is sufficient to comply with the requirements of due process in general and the Bankruptcy Code in specific. Next, the Movant questions the proper application of setoff against a checking account when the balance of the account has fluctuated greatly since the date of the petition. This appears to be an issue of first impression in the courts, and is made more complicated by both the preceding issue of notice and the Supreme Court's recent ruling regarding setoff and administrative freezes in *Citizens Bank of Maryland v. Strumpf,* —— U.S. ——, 116 S.Ct. 286, 133 L.Ed.2d 258 (1995). Last, Movant contends that Debtor's postpetition use of the checking account is a violation of the rules regarding the use of cash collateral. Once again, this issue is dependent on the question of notice, especially in light of the Debtor's argument that the cash collateral prohibitions in the Bankruptcy Code may be waived by inaction on the part of the security holder. The court will address each of the Movant's contentions in turn.

## NOTICE TO PARENT HOLDING COMPANY

As an initial matter, the court must address Movant Fifth Third's contention that

notice was improper as it was sent to the Consumer Loan department of Movant's parent holding company, Fifth Third Bank in Cincinnati, Ohio. Movant contends that absent proper notice to the address on Debtor's loan documents, Movant cannot be held accountable for its failure to apply an administrative freeze earlier in these bankruptcy proceedings.

A debtor in bankruptcy is required to file a list of creditors, including both the name and address of the creditors. *See* 11 U.S.C. § 521(1) (1994); Fed.R.Bankr.P. 1007(a)(1). From that list, creditors are sent notice of the pendency of bankruptcy proceedings. 11 U.S.C. § 342(a) ("There shall be given such notice as is appropriate, including notice to any holder of a community claim, of an order for relief in a case under this title."); Fed. R.Bankr.P. 2002(f)(1) (directing the clerk or clerk's agent to send notice of the order for relief); Fed.R.Bankr.P. 2002(g) (requiring notice to a creditor to be sent to the address on the list of creditors or schedule, whichever is filed later, unless directions to the contrary are given or a different address appears on the creditor's proof of claim); *see also* 11 U.S.C. § 301 ("The commencement of a voluntary case under a chapter of this title constitutes an order for relief under such chapter.").

In the case at bar, it is uncontested that the Debtor listed Movant's address as that of the parent holding company, Fifth Third Bank in Cincinnati, Ohio, and that the address in question is where the notice of the order for relief was sent. Movant admits that this is the address for payments contained on the Debtor's loan statements, and that this is where Debtor sent his payments. It is also clear from the facts at bar that Movant did not apply an administrative freeze on Debtor's checking account until approximately six weeks after the petition was filed. No explanation was offered by the Movant for this delay, other than to point out that Movant and its parent holding company are legally separate entities, and that the Movant's address appears on the loan documents themselves. Movant argues that the Debtor's failure to use the address on the loan documents should excuse Movant's failure to apply an administrative freeze to the account earlier, and that the end result should be that Movant should be deemed to have preserved its original setoff rights, discussed *infra.*

"The purpose of requiring a debtor to list his creditors with their proper addresses is to permit notice to be given to the creditors of the bankruptcy filing so that they may have an opportunity to avail themselves of the rights afforded them by the Bankruptcy Code." *In re Frankina,* 29 B.R. 983, 985 (Bankr.E.D.Mich.1983) (citing *Birkett v. Columbia Bank,* 195 U.S. 345, 350, 25 S.Ct. 38, 39–40, 49 L.Ed. 231 (1904)). While the Bankruptcy Code provides no guidance as to what is the proper address of a creditor, the law is clear that such an address must be one at which notice or service would be reasonably calculated to comply with constitutional notions of due process. *Id.; see also Ford Motor Credit Co. v. Weaver,* 680 F.2d 451, 456 (6th Cir.1982). In addition, it has been held that "[w]here a creditor challenges the accuracy of a listed address, the burden should properly fall upon the creditor to establish that the address provided by the debtor was so incorrect as to fall short of this threshold." *In re Walker,* 125 B.R. 177, 180 (Bankr.E.D.Mich.1990) (citing *Hill v. Smith,* 260 U.S. 592, 595, 43 S.Ct. 219, 220, 67 L.Ed. 419 (1923)).

As the Sixth Circuit has stated in interpreting the parallel section under the Bankruptcy Act:

> In deciding whether a debt is duly scheduled, the extent to which the schedule fulfills the purpose [of the Bankruptcy Act] is a significant factor. The purpose of the scheduling requirement is to enable creditors to receive timely notice of bankruptcy proceedings which may affect their interests. Consequently, an error in listing a creditor's residence or address does not necessarily cause the debt to not be duly scheduled.

*Weaver,* 680 F.2d at 456 (citations omitted).

The determining factor in *Weaver* is whether the creditor is scheduled in a manner that is reasonably calculated to provide him with notice of the bankruptcy proceeding. *Id.* at 455–56; *see also In re Frankina,*

29 B.R. at 985. Thus the central question is one of due process. *Weaver,* 680 F.2d at 456. In *Weaver,* after determining the address in question was incorrect, the Sixth Circuit went on to analyze whether notice could imputed to the creditor based upon notice to an agent. *Id.* at 457.

In the case at bar, the court finds it unnecessary to reach the issue of the agency relationship between Movant and Fifth Third Bank in Cincinnati, Ohio. As stated above, the Sixth Circuit only addressed this issue in *Weaver* after concluding the clearly incorrect address was insufficient. *Id.* The panel did examine some guidelines as to what constituted a correct address, but failed to establish a conclusive test. *Id.* at 456–67 (concluding that an incorrect street address was permissible, but an incorrect city or state was not).

Under the circumstances, where the questioned address is not actually incorrect, but rather is not the desired address for service on the creditor, the court believes it is helpful to do an analysis of the Bankruptcy Code's provisions regarding service of process, *see* Fed.R.Bankr.P. 7004; Fed.R.Civ.P. 4, which are also designed to comply with constitutional questions of due process. *See Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314–15, 70 S.Ct. 652, 657–58, 94 L.Ed. 865 (1950); *KDI Precision Prods., Inc. v. Radial Stampings, Inc.,* 620 F.Supp. 786, 792 (S.D.Ohio 1985).

Though few would argue with the conclusion that the rules governing service of process are among the most difficult to interpret of all the nation's statutes, state or federal, the court is of the opinion that if it can be established that service of process on Movant at the scheduled address would not violate state and federal notions of due process, such an address must comply with the requirements of the Bankruptcy Code. *See* 11 U.S.C. § 521(1); Fed.R.Bankr.P. 1007(a)(1); Fed.R.Bankr.P. 7004(b)(3); Fed.R.Civ.P. 4(h); Fed.R.Civ.P. 4(e)(1); Ohio R.Civ.P. 4.2(6).

Rule 7004(b) states that in part that:

Except as provided in subdivision (h), *in addition to the methods of service authorized by Rule 4(e)–(j) F.R.Civ.P.,* service may be made within the United States by first class mail postage prepaid as follows:

. . . .

(3) Upon a domestic or foreign corporation or upon a partnership or other unincorporated association, by mailing a copy of the summons and complaint to the attention of an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process and, if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the defendant.

Fed.R.Bankr.P. 7004(b)(3) (emphasis added); *see also* Fed.R.Civ.P. 4(h).

The court is convinced from its examination of the case law, that service of process on a parent holding company at a bill-paying address is insufficient to satisfy the requirements of Rule 7004(b)(3). *See, e.g., In re DaShiell,* 124 B.R. 242, 248 (Bankr.N.D.Ohio 1990). As noted in *DaShiell,* however, Rule 7004 incorporates by reference Rule 4 of the Federal Rules of Civil Procedure. *Id.*

Civil Rule 4(h), the rule governing service upon corporations and associations, states in part as follows:

Service Upon Corporations and Associations. Unless otherwise provided by federal law, service upon a domestic or foreign corporation or upon a partnership or other unincorporated association that is subject to suit under a common name, and from which a waiver of service has not been obtained and filed, shall be effected:

(1) *in a judicial district of the United States in the manner prescribed for individuals by subdivision (e)(1),* or by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process and, if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the defendant. . . .

Fed.R.Civ.P. 4 (emphasis added); *see also* Fed.R.Civ.P. 4(e)(1).

In turn, Civil Rule 4(e)(1) permits service "pursuant to the law of the state in which the district court is located, or in which service is effected, for the service of a summons upon the defendant in an action brought in the courts of general jurisdiction of the State." Fed.R.Civ.P. 4(e)(1).

Finally, this brings us to the state law regarding service of process. In Ohio, service of process on a corporation may be obtained "by serving the agent authorized by appointment or by law to receive service of process; *or by serving the corporation by certified mail at any of its usual places of business*; or by serving an officer or a managing or general agent of the corporation." Ohio R.Civ.P. 4.2(6) (emphasis added); *see also KDI Precision Prods.*, 620 F.Supp. at 792 (S.D.Ohio 1985) (finding Ohio's corporate service of process rules to comply with due process requirements); *Samson Sales, Inc. v. Honeywell, Inc.*, 66 Ohio St.2d 290, 293–294, 421 N.E.2d 522, 524 (Ohio Sup.Ct.1981) (same). A recent decision by the Ohio Court of Appeals makes it clear that service on a parent corporation is sufficient to establish service at the "usual places of business," independent of whether the corporation employee who received service was an agent for the purposes of receiving notice. *Ohio Edison Co. v. Oehler*, 1995 WL 592247 at *3 (Ohio Ct.App.1995), *appeal denied*, 75 Ohio St.3d 1405, 661 N.E.2d 755 (Ohio Sup.Ct. 1996).

Thus it remains for the court's consideration whether notice of the order for relief, when sent to the parent holding company of the Movant, Fifth Third Bank, is sufficient to satisfy the requirements of the Bankruptcy Code. *See* 11 U.S.C. § 521(1); Fed. R.Bankr.P. 1007(a)(1). In the *DaShiell* case noted above, Judge Richard L. Speer considered whether service of process "directed to the post office box the Debtor had previously used to make payments to the Bank" complied with both federal and state service of process requirements. *In re DaShiell*, 124 B.R. at 244–45. After examining the relevant rules and constitutional factors, Judge Speer concluded that service under those circumstances complied with both the relevant rules and constitutional notions of due process. *Id.* at 249.

■ The court finds the facts at bar to be analogous to those in *DaShiell* and *Ohio Edison*, above. Debtor listed Movant on the list of creditors with the address contained on the statements sent to Debtor. Movant stipulated that this address was where Debtor sent his loan payments. Notice was sent to this address, which happened to be the parent holding company of the Movant. As such, this court must conclude that this address was one of the Movant's "usual places of business," and that service of process on the Movant at that address was reasonably calculated to provide due process to the Movant. Ohio R.Civ.P. 4.2(6); *Samson Sales, Inc.*, 66 Ohio St.2d at 293–294, 421 N.E.2d at 524.

■ Finally, as previously noted, no explanation other than the difference in addresses was provided as the reason for the six week delay between the date of the Debtor's petition and Movant's application of the administrative freeze. Given that the address in question was one for processing payments of the Debtor to the Movant, the court believes it reasonable to conclude that the bankruptcy notice must have been mishandled, or it would have been transmitted to Movant earlier. As has been previously held in this jurisdiction, when a creditor mishandles a notice from the bankruptcy court, the case law is clear that the creditor is unentitled to plead lack of notice in defense of its claim. *See In re Williams*, 51 B.R. 627, 628–29 (Bankr.S.D.Ohio 1985) (Perlman, J.); *see also Dependable Ins. Co. v. Horton (In re Horton)*, 149 B.R. 49, 58 (Bankr.S.D.N.Y.1992).

In light of the above analysis, it now becomes necessary to determine how, if at all, these conclusions affect the Movant's remaining claims, those pertaining to the right setoff and the use of cash collateral.

### SETOFF

■ The parties do not dispute that the Debtor's checking account was subject to a security interest at the time of the Debtor's petition. The security agreement between

the Debtor and Movant provided that "[t]he collateral in which a security interest is hereby granted includes ... [a]ll money, cash accounts receivable, contract rights, chattel paper, general intangibles, or other rights to the payment of moneys which are due or which may become due to the Debtor." While the existence of a security interest is one issue to be determined when considering the Bankruptcy Code and state law rights of setoff, it is not the only one.

Having found that Fifth Third Bank had a valid security interest in the Debtor's checking account at the time of the petition, the next step is to determine what right of setoff, if any, is available to the bank. The treatment of setoff rights in bankruptcy is addressed in § 553 of the Bankruptcy Code. Section 553(a) states in part that:

> Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a *mutual debt* owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case....

11 U.S.C. § 553(a) (1994) (emphasis added). The remainder of § 553 provides for exceptions in regard to prepetition setoff and transferred right of setoff that are inapplicable here. *See* 11 U.S.C. § 553(b) (1994).

Thus it is clear that the Bankruptcy Code does not create a right of setoff, but instead preserves a conditioned state law right. *See In re Southern Indus. Banking Corp.*, 809 F.2d 329, 331 (6th Cir.1987); *In re Whitaker*, 173 B.R. 359, 360–61 (Bankr. S.D.Ohio 1994) (Caldwell, J.); *In re Cooks*, 157 B.R. 385, 387 (Bankr.S.D.Ohio 1993) (Clark, J.).

In order to exercise a state law right of setoff in bankruptcy, the creditor must establish

1) A debt owed by the creditor to the debtor which arose prior to the commencement of the bankruptcy case; 2) A claim of the creditor against the debtor which arose prior to the commencement of the bankruptcy case; 3) The debt and claim are mutual obligations; and 4) A right to setoff the debts under nonbankruptcy law.

*In re Whitaker*, 173 B.R. at 361.

As to the final condition, under Ohio law a setoff "is that right which exists between two parties, each of whom under an independent contract owes a definite amount to the other, to setoff their respective debts by way of mutual deduction." *Witham v. South Side Building & Loan Ass'n of Lima, Ohio*, 133 Ohio St. 560, 561, 15 N.E.2d 149, 150 (Ohio Sup.Ct.1938); *see also* Ohio Rev. Code § 2309.19 (Baldwin 1996) ("When cross demands have existed between persons under such circumstances that if one had brought an action against the other a counterclaim could have been set up, neither can be deprived of the benefit thereof by assignment by the other, or by his death. The two demands must be deemed compensated so far as they equal each other.").

Thus in order to establish a right to setoff under the both the Bankruptcy Code and the law of the state of Ohio, it is necessary for the Movant to establish that the obligations are prepetition and mutual. Here the Movant's claim, as it relates to postpetition deposits, fails on both counts.

As to the issue of postpetition deposits to a bank account, this question is not new to the court. In 1990, this court addressed the same issue and concluded that setoff applies only to funds deposited in a bank account prior to the Chapter 13 petition date. *Figgers v. Dayton Power and Light Employees Federal Credit Union (In re Figgers)*, 121 B.R. 772, 777 (Bankr.S.D.Ohio 1990) (Clark, J.). In *Figgers*, the court concluded that "[a]ny other funds in the account represent postpetition amounts, and thereby a postpetition obligation of [the creditor], and are not subject to setoff by [the creditor]." *Id.* This is consistent with a plain language interpretation of the statute. *See Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 254, 112 S.Ct. 1146, 1149–50, 117 L.Ed.2d 391 (1992). Section 553 limits setoff to that of a "debt owing by such creditor to the debtor that arose *before* the commencement of the case." 11 U.S.C. § 553(a) (1994) (emphasis added). Deposits made to the checking ac-

**414**

count postpetition give rise to postpetition obligations, and are therefore clearly not subject to setoff. *See Prudential Ins. Co. of Am. v. Nelson (In re Chickamauga Trust Co.)*, 101 F.2d 441, 443 (6th Cir.1939).

■ In addition, the Movant's claim fails in regard to the issue of mutuality. Section 553(a) permits the parties to "offset a *mutual* debt." 11 U.S.C. § 553(a) (1994). In 1982, Judge Charles A. Anderson of this court addressed the meaning of this provision, and demonstrated how mutuality can be dependent upon the previous consideration of timing. *See In re Springfield Casket Co., Inc.*, 21 B.R. 223, 228 (Bankr.S.D.Ohio 1982) (Anderson, J.). Judge Anderson reasoned that prepetition transactions between the debtor and a creditor are just that, transactions between two parties in and of their own right. *Id.* After the order for relief, however, transactions between the a debtor in possession or trustee and a creditor are ones done on behalf of the estate. *Id.* Thus there can be no mutuality as prepetition debts owed by the debtor cannot be offset against postpetition debts owed to the estate. *Id.* As Judge Anderson aptly stated:

> [I]n the context of bankruptcy, postpetition debts may not provide the basis for setoff because mutuality ceases upon the filing of the bankruptcy estate, i.e. a claim owing to a creditor by a debtor may not be offset by a debt owing by the creditor to that debtor's estate, since the parties are not identical and mutuality has ceased.

*Id.* (citing *Arctic Enters. v. Fox Lake Harbor (In re Arctic Enters.)*, 17 B.R. 839, 841 (Bankr.D.Minn.1982); *Citizens Fidelity Bank & Trust Co. v. All–Brite Sign Serv. Co. Inc. (In re All–Brite Sign Serv. Co. Inc.)*, 11 B.R. 409, 411–413 (Bankr.W.D.Ky.1981)).

■ Thus it is clear that the right of setoff cannot exist in postpetition deposits. This volatile nature of setoff rights, *see Citizens' Union Nat'l Bank v. Johnson (In re Kentucky Automotive Co.)*, 288 F. 527, 528 (6th Cir.1923), is the primary purpose for permitting the exercise of an administrative freeze. An administrative freeze is a refusal by the bank "to pay its debt, not permanently and absolutely, but only while it sought relief under § 362(d) from the automatic

stay." *Citizens Bank of Maryland v. Strumpf,* —— U.S. ——, ——, 116 S.Ct. 286, 289, 133 L.Ed.2d 258 (1995). Had the Movant applied its administrative freeze earlier, the issue before the court would have never come to pass. As the court has previously determined herein, this oversight cannot be attributable to the Debtor, as the Movant was properly served with notice of the bankruptcy proceedings at one of its usual places of business. *See* 11 U.S.C. § 521(1); Fed. R.Bankr.P. 1007(a)(1); Fed.R.Bankr.P. 7004(b)(3); Fed.R.Civ.P. 4(h); Fed.R.Civ.P. 4(e)(1); Ohio R.Civ.P. 4.2(6).

It is, however, possible for a bank to fail to timely apply an administrative freeze through no fault of its own. This might occur if the bank was not properly notified of the order for relief, or if a debtor acts to remove funds from the account between the time the petition is filed and the time notice is properly received. In that case, the court is of the opinion that similar remedies as have been applied to the misuse of cash collateral might apply. As one court has succinctly stated:

> It is true that there are no apparent provisions of the Code which specifically provide sanctions for the failure of the debtor to comply with 'cash collateral' requirements. However § 105(a) of the Code gives to the Bankruptcy Court the power to issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.

*Mercantile Nat'l Bank at Dallas v. Aerosmith Denton Corp. (In re Aerosmith Denton Corp.)*, 36 B.R. 116, 119 (Bankr.N.D.Tex. 1983); *see also In re Mr. Gatti's, Inc.*, 164 B.R. 929, 942 (Bankr.W.D.Tex.1994) (recognizing § 105 powers as a remedy for violations of § 363); *In re Telesphere Communications, Inc.*, 148 B.R. 525, 531 (Bankr. N.D.Ill.1992) (same). *But see Indian Motocycle Assocs. III Ltd. Partnership v. Massachusetts Hous. Fin. Agency*, 66 F.3d 1246, 1251 (1st Cir.1995) (warning against the bankruptcy court fashioning the extraordinary remedy of 'reimbursement'); *Centerre Bank Nat'l Assoc. v. Continental Marine Corp. (In re Continental Marine Corp.)*, 35 B.R. 990, 992 (Bankr.E.D.Mo.1984) (declining

to use contempt powers as remedy for misuse of cash collateral). *See generally* Stephen Mount, Note, *Standards and Sanctions for the Use of Cash Collateral Under the Bankruptcy Code,* 63 TEX.L.REV. 341 (1984).

While the court finds it unnecessary to fashion any of the extraordinary remedies mentioned above, as it has determined that the Movant's setoff rights were lost through no fault of the Debtor, the court will revisit this issue when considering the possible misuse of cash collateral under the Bankruptcy Code.

Finally, the court notes that the recent Supreme Court case of *Strumpf,* while validating the application of an administrative freeze under these circumstances, does not appear to affect any of the above reasoning regarding setoff rights. *Citizens Bank of Maryland v. Strumpf,* —— U.S. ——, 116 S.Ct. 286, 133 L.Ed.2d 258 (1995). In *Strumpf,* the Court addressed the issue of whether an administrative freeze, when applied to a debtor's bank account postpetition, amounts to a violation of the automatic stay. *Id.* at ——, 116 S.Ct. at 290; *see also* 11 U.S.C. § 362(a)(1) (prohibiting "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate.").

The Court, in considering this question, found the obligation owed by the bank on the account to be merely a promise to pay, and not therefore property of the estate. *Id.* at ——, 116 S.Ct. at 290. *But see* H.R.Rep. No. 595, 95th Cong., 1st Sess. 367–68 (1977), *reprinted in* 1978 U.S.C.C.A.N. at 6323 (1978) (considering property of the estate to include "all kinds of property, including tangible or intangible property [and] causes of action....."). As the Court reasoned:

> Respondent's reliance on these provisions rests on the false premise that petitioner's administrative hold took something from respondent, or exercised dominion over property that belonged to respondent. That view of things might be arguable if a bank account consisted of money belonging to the depositor and held by the bank. In fact, however, it consists of nothing more or less than a promise to pay, from the bank to the depositor, ... and petitioner's

temporary refusal to pay was neither a taking of possession of respondent's property nor an exercising of control over it, but merely a refusal to perform its promise.

*Strumpf,* —— U.S. at ——, 116 S.Ct. at 290 (citations omitted).

The Supreme Court's treatment of these accounts as promises to pay is consistent with the preceding analyses of setoff rights under the Bankruptcy Code. Section 553 speaks not of tangible property, but instead of debts, which are in fact promises to pay. Judge Anderson, in his analysis of mutuality discussed above, makes it clear that his conclusions are based upon the "debts" owed, and not the separate existence of property of the estate. *In re Springfield Casket Co., Inc.,* 21 B.R. 223, 228 (Bankr.S.D.Ohio 1982).

It is therefore the court's conclusion that Fifth Third Bank of Western Ohio is entitled only to setoff those obligations that existed at the time of petition and continue to exist today. This can only be measured by the lowest postpetition balance, $1,944.23, as that is the only prepetition obligation on the account that has not been replaced by postpetition obligations. The court will therefore permit Fifth Third Bank of Western Ohio to exercise its setoff rights as to that amount of the frozen checking account obligations only. As to the remainder of the account, the court must first analyze the Bankruptcy Code's cash collateral provisions before determining its outcome.

## CASH COLLATERAL

The rules pertaining to cash collateral, unlike the rules pertaining to setoff, require no mutual debt between the parties. Instead, § 363 of the Bankruptcy Code prohibits postpetition use of cash collateral without the prior consent of the security holder or the permission of the court. Section 363(c) states in part:

> The trustee may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless—
>
> > (A) each entity that has an interest in such cash collateral consents; or

(B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

11 U.S.C. § 363(c)(2) (1994). Cash collateral "means cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest...." 11 U.S.C. § 363(a) (1994).

 In order to determine what portion, if any, of the Debtor's checking account is subject to the cash collateral provisions of § 363, it is necessary first to determine the extent of the Movant's security interest. The language of the security agreement quoted above that grants the Movant a security interest in moneys "which are due or which may become due to the Debtor" is tantamount to a floating lien. Floating liens are prohibited from operating postpetition by the provisions of § 552 of the Bankruptcy Code. Section 552 states, in part, that:

Except as provided in subsection (b) of this section, property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case.

11 U.S.C. 552(a) (1994); *Figgers v. Dayton Power and Light Employees Federal Credit Union (In re Figgers)*, 121 B.R. 772, 777 (Bankr.S.D.Ohio 1990) (Clark, J.); *see also Toof v. City Nat'l Bank of Paducah, Ky.*, 206 F. 250, 253 (6th Cir.1913). The remainder of § 552 provides for exceptions to this rule as to transferred interests and proceeds from secured property, neither of which are applicable here. *See* 11 U.S.C. § 552(b) (1994).

It has been observed that the cash collateral provisions require a balancing of interests between the creditor and the debtor:

Congress in enacting § 363 of the Code gave a special treatment to 'cash collateral' for the obvious reason that cash collateral is highly volatile, subject to rapid dissipation and requires special protective safeguards in order to assure that a holder of a lien on 'cash collateral' is not deprived of its collateral through unprotected use by the Debtor. On the other hand, it needs no elaborate discussion to show and anyone familiar with reorganization proceedings knows that if a Debtor who seeks relief under Chapter 11 is deprived of the use of cash, its chances to secure rehabilitation is immediately destroyed and very few, if any, entities could survive and effectuate a reorganization without cash.

*In re Mickler*, 9 B.R. 121, 123 (Bankr. M.D.Fla.1981). Though the above quote pertains to the importance of cash collateral in Chapter 11 cases, the case law is clear that the use of cash collateral is equally important in Chapter 13 cases. *Carey v. General Motors Acceptance Corp. (In re Carey)*, 202 B.R. 796, 799 (Bankr.M.D.Ga.1996).

 Thus it is clear that the cash collateral provisions were applicable, and that Debtor's use of the funds in the checking account was a violation of § 363(c)(2). The difficulty is to determine what remedy should be available to the Movant. "[N]o specific remedy is afforded an affected creditor if the Debtor fails to comply with the clear restriction on use of cash collateral...." *In re Mr. Gatti's, Inc.*, 164 B.R. 929, 943 (Bankr.W.D.Tex.1994). Instead, as noted above, courts have crafted various remedies for the misuse of cash collateral. *Mercantile Nat'l Bank at Dallas v. Aerosmith Denton Corp. (In re Aerosmith Denton Corp.)*, 36 B.R. 116, 119 (Bankr.N.D.Tex. 1983) (replacement lien); *In re Mr. Gatti's, Inc.*, 164 B.R. at 943 (citing for cause provisions in Code); *In re Telesphere Communications, Inc.*, 148 B.R. 525, 531 (Bankr. N.D.Ill.1992) (same); *Associates Fin. Servs. Co. of Tex., Inc. v. Koran Enters., Inc. (In re Koran Enters., Inc.)*, 61 B.R. 321, 328 (Bankr.W.D.Mo.1986) (holding debtor's corporate officer liable in conversion); *In re Etch–Art, Inc.*, 48 B.R. 143, 146 (Bankr. D.R.I.1985) (damages). *But see Indian Motocycle Assocs. III Ltd. Partnership v. Massachusetts Hous. Fin. Agency*, 66 F.3d 1246, 1251 (1st Cir.1995) (warning against the bankruptcy court fashioning the extraordinary remedy of 'reimbursement'); *Centerre Bank Nat'l Assoc. v. Continental Marine Corp. (In re Continental Marine Corp.)*, 35 B.R. 990, 992 (Bankr.E.D.Mo.1984) (declining

to use contempt powers as remedy for misuse of cash collateral). *See generally* Stephen Mount, Note, *Standards and Sanctions for the Use of Cash Collateral Under the Bankruptcy Code,* 63 TEX.L.REV. 341 (1984).

 Several additional considerations must be weighed when considering possible remedies for a violation of the Bankruptcy Code's cash collateral provisions. A creditor who complains of a violation of § 363(c)(2) must establish that such a violation has resulted in harm to the creditor. *In re National Safe Northeast, Inc.,* 76 B.R. 896, 906 (Bankr.D.Conn.1987) ("A violation of § 363(c)(2) which causes no loss to a secured creditor does not otherwise impose liability on the violators."). Here, Fifth Third Bank provided no evidence that its actual claim has been impaired, other than through the loss of setoff rights.

The court is also aware of a line of precedent which states that a bank may lose its right to enforce § 363(c)(2) by permitting the debtor to use funds in the checking account postpetition. *In re Crispell,* 73 B.R. 375, 380–81 (Bankr.E.D.Mo.1987); *Ossen v. Bernatovich (In re National Safe Northeast, Inc.),* 76 B.R. 896 (Bankr.D.Conn.1987); *In re Wilson,* 49 B.R. 19, 21 (Bankr.N.D.Tex. 1985); *In re Gemel Intern., Inc.,* 190 B.R. 4, 11 (Bankr.D.Mass.1995); *In re Archer,* 34 B.R. 28, 30 (Bankr.N.D.Tex.1983); *In re Royal Crown Bottling Co. of Boaz, Inc.,* 29 B.R. 52, 54 (Bankr.N.D.Ala.1981).

As in the case of setoff, the court is convinced that this final concern is controlling under the facts at bar. Absent a showing of intentional misconduct of the Debtor or a failure of notification under Rule 2002(f)(1), the court is hesitant to punish a debtor in possession for simply conducting business out of his checking account, especially in light of the Movant's failure to timely pursue its setoff rights. In addition, as the Movant has offered no evidence that its actual claim has been prejudiced by the use of cash collateral, the court finds that the award of any extraordinary remedy would be improvident.

## CONCLUSION

For the foregoing reasons the court finds that the Movant, Fifth Third Bank of Western Ohio, should be entitled to relief from stay only to exercise its right of setoff against $1,944.23 of the checking account's balance. In respect to exercising its right of setoff against that amount, Fifth Third Bank's Motion for Relief from Automatic Stay is hereby GRANTED. With respect to the remainder of the account, Fifth Third Bank's Motion is DENIED, and Movant is ORDERED to release its administrative hold on all funds in excess of the $1,944.23.

IT IS SO ORDERED.