In re Joel SCHWARTZ, Debtor.

Bankruptcy No. 97–13052.

United States Bankruptcy Court, S.D. Ohio, Western Division.

July 31, 1997.

Michael J. Barren, Porter, Wright, Morris & Arthur, Cincinnati, OH, for Star Bank.

Norman L. Slutsky, Cincinnati, OH, for Debtor.

## ORDER RE: MOTION FOR RELIEF FROM STAY

J. VINCENT AUG, Jr., Bankruptcy Judge.

This matter is before the Court on Star Bank, N.A.'s (the "Bank") motion for relief from stay (Doc. 9), the Debtor's response (Doc. 13), the Bank's reply (Doc. 17), and the parties' post-hearing submissions (Docs.21, 22). A hearing was held on June 25, 1997.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 and the General Order of Reference entered in this District. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G).

The issues before the Court involve the Bank's setoff rights in the Debtor's checking account and the Debtor's postpetition use of the checking account as cash collateral.

The Debtor filed his chapter 7 bankruptcy petition on May 14, 1997. As of May 14, 1997, the Debtor was indebted to the Bank in the amount of $4,254.88 on a Visa account. The Debtor also had a checking account with the Bank, which had a balance of $1,023.78 as of May 14, 1997. On June 2, 1997, the Bank received the Notice of Commencement of Case and placed an administrative hold on

$1,023.78 in the checking account[1]. Between May 14, 1997 and June 2, 1997, the Debtor made several deposits totaling $1,210.63 into the checking account and wrote several checks totaling $1,118.68 against the checking account. The minimum balance in the checking account between May 14, 1997 and June 2, 1997 was $383.40[2]. (Doc. 18, Ex. C).

## SETOFF

The Bank contends that it is entitled to relief from the stay to setoff the Debtor's prepetition debt to it against the assets of the estate existing at the time the petition was filed, i.e., the $1,023.78 checking account balance. In the alternative, the Bank contends that it is entitled to setoff as to the minimum account balance of $383.40 that existed between May 14, 1997 and June 2, 1997. The Debtor contends that the Bank has no right to setoff since the Debtor's postpetition withdrawals of $1,118.68 exceed the June 2, 1997 balance of $1,023.78 and, therefore, that there are no prepetition assets against which setoff may occur.

In *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 116 S.Ct. 286, 133 L.Ed.2d 258 (1995), the Supreme Court held that a bank may, in order to protect its setoff rights, temporarily withhold payment of a debt that it owes to the debtor-depositor, i.e., the bank's promise to pay on the debtor-depositor's account, without violating the automatic stay. The *Strumpf* decision effectively eliminated the so-called "banker's dilemma", that is, whether to withhold payment and risk

violating the stay or allow the debtor to withdraw his funds from the bank, effectively defeating the bank's setoff rights. Although there was more than eight months between the petition filing date and the date on which the creditor initially placed an administrative hold on the debtor's bank account in *Strumpf,* whether or not the debtor made postpetition withdrawals or deposits into the account was not dispositive in that case[3].

█ Judge William A. Clark of this Court recently addressed the issue of a setoff against postpetition assets in *In re Kleather,* 208 B.R. 406 (Bankr.S.D.Ohio 1997)[4]. We agree with Judge Clark's thorough analysis that setoff applies only to funds deposited into the checking account prior to the petition filing date. *Id.* at 413. Judge Clark further concluded in *In re Kleather* that the bank was "entitled to setoff those obligations that existed at the time of petition and continue to exist today." The holding continued: "This can only be measured by the lowest postpetition balance ... as that is the only prepetition obligation on the account that has not been replaced by postpetition obligations."

█ In the present case, however, since the Debtor's postpetition withdrawals from the checking account exceeded the May 14, 1997 account balance, there were no prepetition funds in the account as of June 2, 1997 against which the Bank could setoff. *See In re Kleather,* 208 B.R. at 413. It was only the Debtor's postpetition deposits that created a

---

1. On June 2, 1997, the checking account balance was $1,115.73.

2. Although the Bank indicates in its memorandum that the minimum account balance during this time period was $460.79, the Bank's records indicate that the minimum account balance was $383.40. *See* Doc. 18, Ex. C.

3. The bankruptcy court in *Strumpf* ruled that the bank's administrative hold was a violation of the automatic stay. Several weeks later, the bankruptcy court granted the bank's motion for relief from stay and authorized the bank to setoff the remaining balance in the checking account against the unpaid loan. By that time however, the debtor had reduced the checking account balance to zero, so there was nothing to setoff. *See Strumpf,* 516 U.S. at ——, 116 S.Ct. at 288.

4. This Court brought *In re Kleather* to the attention of the parties' attorneys at the June 25, 1997 hearing. The case is not wholly supportive of the Bank's position. The Debtor's attorney, Mr. Slutsky, appeared to have no knowledge of the case. It was obvious, however, that the Bank's attorney, Mr. Barren, had read the case very closely. This Court is disturbed that Mr. Barren would choose not to cite this reported decision from this District in either his Motion or his Reply, both of which were filed prior to the hearing. Mr. Barren's attention is called to Disciplinary Rule 7–106(B)(1) of the Ohio Code of Professional Responsibility which states as follows: "In presenting a matter to a tribunal, a lawyer shall disclose legal authority in the controlling jurisdiction known to him to be directly adverse to the position of his client and which is not disclosed by opposing counsel."

positive account balance as of June 2, 1997. However, this does not make the Bank's administrative hold improper, nor does it leave the Bank without a remedy. *See infra,* pp. 698–99.

Furthermore, we do not believe that our holding will require banks to perform burdensome calculations as a prerequisite to the effectuation of their setoff rights. As is evident from the Bank's exhibits in this case, the Debtor's account activity was readily available to the Bank from its computer records. It is simple arithmetic to add the postpetition withdrawal amounts and compare that sum to the account balance as of the petition filing date.

### CASH COLLATERAL

The Bank contends that the Debtor's postpetition withdrawals from the checking account were a violation of 11 U.S.C. § 363(c)(2), which prohibits the postpetition use of cash collateral without the prior consent of the security holder or the permission of the court. The Debtor's withdrawals included a $557.55 payment to Fifth Third Bank and a $526.00 payment to Merit Furniture (Doc. 18, Ex. H). The latter is not shown as a creditor on the Debtor's schedules.

The Debtor's checking account was cash collateral. *See* 11 U.S.C. § 363(a); *see also In re Kleather,* 208 B.R. at 416. The signature card signed by the Debtor[5] (Doc. 18, Ex. D) and the Checking Account Agreement[6] (Doc. 18, Ex. E) *created a security interest in the checking account to secure the payment of the Visa account. See* Ohio Rev. Code § 1309.14(A)[7]; *see also In re Harbour Lights Marina, Inc.,* 146 B.R. 963, 968 (Bankr.S.D.Ohio 1992) (Perlman, J.) (composite document approach used to determine whether security interest has been given), *aff'd on other grounds,* 153 B.R. 781

(S.D.Ohio 1993). The Bank's security interest was perfected by its possession of the monies in the checking account. *See* Ohio Rev.Code § 1309.24. Accordingly, we find that the Debtor's postpetition use of prepetition funds in the checking account was an improper use of cash collateral and a violation of § 363(c)(2). *See In re Kleather,* 208 B.R. at 416.

The Debtor contends that he was not aware of the security interest. The Debtor's testimony showed that he had little, if any, recollection of the circumstances under which he opened either his Visa account or checking account with the Bank. The Debtor did not deny signing the signature card. The Debtor did not allege that the Bank engaged in fraud or misrepresentation. Accordingly, we find that the Debtor's testimony that he was unaware of the security interest not credible.

The Debtor also contends that he did not intend to harm the Bank by his postpetition use of the cash collateral. Intent, however, is not a prerequisite to a finding of a violation of § 363(c)(2).

A creditor who complains of a violation of § 363(c)(2) must establish that such a violation has resulted in harm to the creditor. *See In re Kleather,* 208 B.R. at 416. In the present case, had the Debtor not made the postpetition withdrawals, the Bank could have effected its setoff rights as to the May 14, 1997 balance. In contrast to *In re Kleather,* which was a chapter 13 case, the present case is a no asset chapter 7 bankruptcy and, therefore, the Debtor's postpetition use of the cash collateral has impaired the Bank's secured claim.

Also, in the present case, the Bank did not delay in placing its administrative hold on the Debtor's account. The testimony presented by the Bank's bankruptcy coordinator indicated that the Bank placed its administrative

---

5. The signature card states that the Debtor acknowledges receipt of and agrees to be bound by the Bank's terms.

6. The Agreement states that "[i]n case the depositor is liable to the Bank for the payment of any ... indebtedness, ... and such indebtedness is deemed due and payable by the Bank or the Bank deems itself insecure ... then the Bank

shall have the right ... to apply at any time any balance in the account to ... the payment of such indebtedness ..."

7. For purposes of attachment, possession of collateral will also suffice. *See* Ohio Rev.Code § 1309.14(A)(1).

hold on the Debtor's account the same day it received the Notice of Commencement of Case. *Cf. In re Kleather*, 208 B.R. at 417 (movant failed to timely pursue setoff rights). The time period between May 14, 1997 and June 2, 1997 is due, in part, to the inevitable delay in every bankruptcy case between the filing of the petition by the Debtor, the noticing of the filing of the petition by the Court, and the receipt of the notice by the creditors[8]. The delay may also have been due, in part, to the Debtor's failure to use a complete address for the Bank in his schedules[9].

Furthermore, the District Court in *Strumpf*, whose reasoning the Supreme Court adopted, realized the irony in granting the bank its setoff rights after the debtor has emptied out the account. *See Citizens Bank of Maryland v. Strumpf*, 138 B.R. 792, 794 (D.Md.1992). For *Strumpf* to have its intended effect, a debtor must not be allowed to circumvent a creditor's right to setoff by improperly withdrawing cash collateral from an account in the postpetition period[10].

The Debtor contends that the postpetition deposits were personal earnings, and, as such, are exempt from setoff under Ohio Rev.Code § 2329.66. The Ohio exemption statute, however, applies only to judicial process, i.e., garnishment, and not to the extrajudicial remedy of setoff. *See Daugherty v. Central Trust Co.*, 28 Ohio St.3d 441, 504 N.E.2d 1100 (1986).

A replacement lien is an appropriate remedy where a debtor uses cash collateral without secured party consent or court order. *See In re Aerosmith Denton Corp.*, 36 B.R. 116 (Bankr.N.D.Tex.1983) (§ 105 of the Code empowers court to protect valid lien after bankruptcy has been initiated). The Debtor contends that a replacement lien on postpetition wages is too harsh a remedy. However, there appears to be no other source of funds from which to compensate the Bank and the

Debtor has offered no alternative solution. Nor did the Debtor explain why he made two large postpetition payments to Fifth Third Bank and Merit Furniture.

Accordingly, the Bank is granted a replacement lien on the Debtor's postpetition assets in the amount of $1,023.78. In the alternative, if the Debtor no longer has a balance of $1,023.78 in his checking account, the Bank shall be allowed to retain the $1,023.78 from its administrative hold.

In view of the foregoing, the Debtor's request for sanctions is denied. The Bank did not violate the automatic stay, *see Strumpf*, 516 U.S. 16, 116 S.Ct. 286, and the ability of lending institutions to effectuate their setoff rights in the wake of *Strumpf* is a legal process currently being developed.

IT IS SO ORDERED.

---

**8.** In the present case, the petition was filed on May 14, 1997. The Notice of Commencement of Case was issued by the Court on May 19, 1997. *See* Doc. 5. The Notice was served by the Court's noticing service on May 21, 1997. *See* Doc. 8. The resulting twelve days from May 22, 1997 to June 2, 1997 included two weekends and one holiday.

**9.** The address shown on the Debtor's schedules is simply "P.O. Box 956 Cincinnati." Curiously, the certificate of service includes the state and zip code. *See* Doc. 8.

**10.** The irony is not lost on this Court that this holding may encourage the prepetition emptying of Debtors' bank accounts.